IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CYNTHIA WILLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:09-CV-1154-WKW [WO] |
| | ) |
| SANTA FE PROTECTIVE SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Santa Fe Protective Services, Inc.'s ("Santa Fe") Motion for Summary Judgment (Doc. # 30), which has been briefed and is ready for adjudication (Docs. # 31, 32, 36, 37, 39). Plaintiff Cynthia Willis ("Willis") alleges that Santa Fe failed to hire her as a security guard on the bases of sex and pregnancy, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k). Viewing the evidence and all reasonable inferences from that evidence in the light most favorable to Ms. Willis, the court finds that genuine issues of material fact preclude summary judgment.

**I. JURISDICTION AND VENUE**

Jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction). The parties do not contest personal jurisdiction or venue, and there are adequate allegations sufficient to support both.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56.  On summary judgment, the evidence and the inferences from that evidence must be viewed in the light most favorable to the non-movant.  *See Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).  Hence, "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

## III.  BACKGROUND

In April 2009, Santa Fe was awarded a contract by the United States Army to provide security guard services at Fort Rucker, Alabama, beginning June 1, 2009.  (Mark Liming Dep. 57 (Ex. B to Doc. # 32).)  The Performance Work Statement ("PWS"), included in Santa Fe's contract with the Army, required Santa Fe to "furnish all personnel," including security guards, a Chief of Guards and a Deputy Chief of Guards.  (PWS § I.1 & I.4 (Ex. 3 to Doc. # 32).)  The PWS also required Santa Fe to provide only "personnel who me[t] or

exceed[ed] the minimum qualification requirements, as per Army Regulation AR 190-56."[1] (PWS § I.4.1.)  One of the provisions of AR 190-56 required successful completion of a physical agility test ("PAT").  (AR 190-56, at 37 (Ex. D to Doc. # 32); *see also* PWS § 1.4.10 (providing that "[a]ll guard force personnel will take a pre-assignment/employment entry-level Physical Agility Test (PAT) and thereafter an annual PAT.").)  This controversy centers on Santa Fe's implementation of its policy requiring successful completion of the PAT as a condition of employment.[2]

It is undisputed that Santa Fe implemented its PAT Policy based upon the requirements outlined in the September 2006 version of AR 190-56.  To pass the PAT, the applicant – male or female – was required to (1) finish 29 sit-ups in 2 minutes, (2) complete a 300-meter sprint in 81 seconds, (3) execute 21 push-ups in 2 minutes, and (4) run 1.5 miles in 17:30 minutes.  (AR 190-56, at 37.)  These four test events were performed in the order listed, and the failure to pass an event precluded the applicant from proceeding to the next test event.  (AR 190-56, at 37; *see also* Pl. Dep. 58 (Ex. A to Doc. # 32).)  Before administering the PAT to an applicant, Santa Fe required certification from a physician that the applicant could "safely perform" the PAT.  (Pl. Health Evaluation, dated May 6, 2009 (Ex. 2 to Pl. Dep.); Liming Dep. 41, 43.)  This pre-PAT medical screening included an

---

[1] AR 190-56 is titled "The Army Civilian Police and Security Guard Program."

[2] Santa Fe's employment policies were, in effect, established through its contracts with the Army, which included the PWS (Liming Dep. 125).  Herein, the condition of employment requiring successful completion of the PAT will be referred to as Santa Fe's "PAT Policy."  The PWS will be referred to by that acronym or as Santa Fe's "Policies."

evaluation of the applicant's vital signs, height and weight, and the identification of specified medical "abnormalities." (Pl. Health Evaluation.)

Since 2003, Ms. Willis had worked as a security guard at Fort Rucker for the previous two contract holders, and sought employment with Santa Fe upon its takeover of security guard operations. (Pl. Dep. 11-12; Pl. Decl. ¶ 2 (Ex. 7 to Doc. # 37).) As a condition of employment, Santa Fe required Ms. Willis to pass the PAT. (Conditional Letter of Employment (Ex. A-4 to Doc. # 32); Pl. Decl. ¶ 5; Pl. Dep. 44.) On May 6, 2009, a physician certified that Ms. Willis could "safely perform" the PAT. (Pl. Health Evaluation.) Thereafter, Ms. Willis attempted the PAT twice, once on May 9, 2009, and again on May 23, 2009. Each time, however, she did not complete the required 29 sit-ups within the time limit and, thus, did not continue to the second test event.[3] (Pl. Dep. 58-59, 67-68.)

Ms. Willis attributes her inability to pass the sit-up component of the PAT to weakened abdominal muscles resulting from her pregnancy and delivery of a child on January 16, 2009.[4] (Pl. Dep. 30, 65-67, 77; Pl. Decl. ¶¶ 6-7.) Notwithstanding that she informed Santa Fe officials that she had "just come back from maternity leave from having [her] child" (Pl. Dep. 72), Santa Fe told Ms. Willis that she would not be hired because she did not pass the PAT and that "no doctor's excuses would be accepted." (Pl. Decl. ¶ 7; Pl.

---

[3] On May 9, she completed 19 sit-ups. She improved her performance on May 29, but fell one short of the 29 required sit-ups.

[4] In response to the question of whether the "delivery was uneventful or normal," Ms. Willis responded, "Yes." (Pl. Dep. 31.) She also testified that "there were no complications or unusual events." (Pl. Dep. 31.) After the birth of her child, Ms. Willis was on maternity leave until mid-March 2009.

4

Dep. 71-72).[5]  It is undisputed that in May 2009, Santa Fe hired two males – Joe Gentz ("Gentz") and Mr. Frank Gorski ("Gorski") – to fill the positions of Chief of Guards and Deputy Chief of Guards and that neither took the PAT.  (Liming Dep. 45, 66, 109.)

### IV.  DISCUSSION

In this lawsuit, Ms. Willis contends that Santa Fe discriminated against her based upon her pregnancy-related medical condition (weakened abdominal muscles) and her sex, in violation of the PDA and Title VII.  Title VII provides, in pertinent part, that an employer may not "fail or refuse to hire . . . any individual, or otherwise . . . discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  The PDA incorporates "because of . . . pregnancy, childbirth, or related medical conditions" into § 2000e-2(a)(1)'s definition of "because of sex."  § 2000e(k).

Ms. Willis contends that Santa Fe's PAT Policy requiring her to pass the PAT as a condition of employment is pretext for pregnancy and sex discrimination prohibited by the PDA and Title VII.  A plaintiff may challenge an employer's policy, which is "neutral on its face (*i.e.*, it does not by its terms apply exclusively to a protected group)," through a "claim of disparate treatment based on a pretext theory."  *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d

---

[5] As emphasized by Ms. Willis, in May 2009, the Army's PAT requirements were in a state of flux.  The preceding year, in March 2008, the Army's Office of the Provost Marshal General issued a memorandum announcing that AR 190-56 would be revised and requested that no adverse action be taken against any employee who failed the PAT.  The revised AR 190-56, published in October 2009, relaxed the PAT, requiring test takers to complete 19 push-ups in two minutes and a 1.5 mile run in 17:30 minutes.  The requirement for sit-ups was eliminated from the PAT, and temporary PAT exemptions for medical restrictions were added.  Ms. Willis took the PAT after the release of 2008 memorandum, but before publication of the revised AR 190-56.

1308, 1313 (11th Cir. 1994). A "claim of disparate treatment, based on a theory of 'pretext' and supported by circumstantial evidence," as here, is governed by the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Armstrong*, 33 F.3d at 1313. Under the *McDonnell Douglas* framework, the employee must first make out a *prima facie* case of discrimination, which the employer can rebut by articulating a legitimate, non-discriminatory reason for its action. *Id.* at 1313-14. To prevail, the plaintiff must show that the employer's reason is a pretext for discrimination. *Id.*

Santa Fe contends, and Ms. Willis does not dispute, that to establish a *prima facie* case of discrimination under the PDA, Ms. Willis must demonstrate that (1) she is a member of a group protected by the PDA; (2) she was qualified for the position sought; (3) she suffered an adverse employment action; and (4) she suffered from a differential application of work rules.[6] *Armstrong*, 33 F.3d at 1314; *accord Spivey v. Beverly Enters., Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999). The *prima facie* case elements for Ms. Willis's Title VII sex

---

[6] At least one court has observed that in discrimination cases, the "differential application of work rules" formulation, as set out above, "is not . . . an alternate means of establishing a prima facie case but merely an alternate way of expressing the 'similarly situated' requirement." *McCann v. Mobile Cnty. Pers. Bd.*, No. 05-0364, 2006 WL 1867486, at *5 (S.D. Ala. July 6, 2006). While in limited circumstances the Eleventh Circuit has dispensed with the similarly situated *prima facie* element, neither Ms. Willis nor Santa Fe argues for that exception in this case. *See Armindo v. Padlocker*, Inc., 209 F.3d 1319, 1321 (11th Cir. 2000) ("A plaintiff alleging pregnancy discrimination need not identify specific non-pregnant individuals treated differently from her, if the employer violated its own policy in terminating her." (citing *Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1383 (11th Cir. 1994) (inference of pregnancy discrimination arose where employer fired pregnant employee for excessive absences despite employee having missed no more than her sick time allotted under company policy)); *see also Cross v. Sw. Recreational Indust.*, 17 F. Supp. 2d 1362, 1374 (N.D. Ga. 1998) ("[E]vidence that [plaintiff] was singled out for adverse treatment is sufficient to survive summary judgment in a pregnancy discrimination context." (citing *Byrd*, 30 F.3d at 1383)); *see generally Embry v. Callahan Eye Found. Hosp.*, 147 F. App'x 819, 830 n.12 (11th Cir. 2005) ("Even in the absence of evidence showing that a 'similarly situated,' employee outside of the plaintiff's protected status has been treated differently, a plaintiff still may be able to establish, by circumstantial evidence, a prima facie case of discriminatory animus.") (quoting *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1322-24 (11th Cir. 1998)).

discrimination claim parallel the PDA elements, *see Armstrong*, 33 F.3d at 1312-13, and in this case, there is a substantial overlap of proof.

The parties agree that Ms. Willis is female (element one of the sex discrimination claim), that Ms. Willis applied for a position with Santa Fe (part of element two for both the pregnancy and sex discrimination claims), and that Santa Fe's failure to hire her is an adverse employment action (element three for both claims). Everything else is in contention.

On this record, the *prima facie* elements do not provide grounds for granting summary judgment on either the pregnancy discrimination or sex discrimination claim. Santa Fe argues that Ms. Willis cannot establish the first element of her PDA *prima facie* case because she "was medically cleared to take the PAT as part of her application for employment with Santa Fe." (Def. Summ. J. Br. 11 (Doc. # 31).) More specifically, Santa Fe relies on the physician's pre-PAT health evaluation of Ms. Willis and his certification that she could "safely perform" the PAT as proof that Ms. Willis did not suffer from any medical condition encompassed within the PDA's protections.[7] (Pl. Health Evaluation; *see also* Pl. Dep. 48-50.) In response, Ms. Willis emphasizes that she was required to take the PAT merely four months after childbirth, and that at that time, she still was recovering from weakened abdominal muscles caused by her pregnancy and the delivery itself. (Pl. Summ. J. Resp. 18 (Doc. # 36).) She contends that the PDA "covers this physical condition" because "it is

---

[7] The one-page Employee Health Evaluation form contains the physician's certification. The court will refer to this document as the "physician certification."

7

directly related to her pregnancy and recovery therefrom." (Pl. Summ. J. Resp. 18 (internal quotation marks omitted).)

The PDA does not define what constitutes a medical condition related to pregnancy or childbirth. Its legislative history indicates, however, that Congress intended for "employers to treat disabilities caused or contributed to by pregnancy, . . . childbirth and *recovery therefrom* as all other temporary disabilities." H.R. Rep. No. 95-948 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4749, 4750 (emphasis added).

Summary judgment is inappropriate on this record. First, although the law is sparse, the absence of case law on analogous facts is not, in and of itself, a reason to grant summary judgment, as Santa Fe urges. (*See* Def. Summ. J. Br. 11-12.) It is equally noteworthy that no authority has been cited that forecloses Ms. Willis's inclusion in a group protected by the PDA.

Second, Santa Fe asks the court to find as a matter of law that the physician certification is synonymous with the absence of a pregnancy- or childbirth-related medical condition. However, the court cannot do so for a number of reasons. There is no evidence that, as part of his certification, the physician was asked to evaluate whether Ms. Willis suffered from a medical condition related to pregnancy or childbirth. Stated another way, while it is true that the physician found no medical abnormalities and that Ms. Willis could "safely perform" the PAT, there is no evidence that the physician ruled out the existence of a pregnancy- or childbirth-related medical condition. It also is unclear from the record whether one could "safely perform" the PAT and, at the same time, suffer from weakened

abdominal muscles caused by pregnancy and childbirth. Because the physician certification upon which Santa Fe relies contains too many unanswered questions, it does not support the grant of summary judgment.

Third, there is some evidence of a temporal nexus between the date of childbirth (January 16, 2009) and the dates Ms. Willis attempted to pass the PAT (May 9 and 23, 2009). Reasonable minds could disagree as to whether Ms. Willis's weakened abdominal muscles four months after a full-term pregnancy and the ordeal of childbirth is sufficiently proximate to constitute "recovery therefrom." In the absence of expert testimony or other evidence establishing the contrary, the factual issue remains for trial. *See, e.g.*, *Whitfield v. Finn*, 731 F.2d 1506, 1509 (11th Cir. 1984) ("Because important factual issues remain unresolved, summary judgment was inappropriate."). This evidence, in combination with the absence of evidence that Ms. Willis's alleged weakened abdominal muscles were caused by a condition unrelated to pregnancy or childbirth and Congress's inclusion of the pregnancy and childbirth recovery period in its discussion of PDA disabilities, weighs against summary judgment.

No finding is made that Ms. Willis will prevail on the issue whether she is within a group protected by the PDA. Rather, the finding is that genuine issues of material fact exist for trial on the issue.

As to qualifications, the sole reason Santa Fe contends Ms. Willis was not qualified for the security guard position is the same as its proffered reason for not hiring Ms. Willis – *i.e.*, that Ms. Willis did not pass the PAT. (*See* Def. Summ. J. Br. 12, 14.) In *Holifield v.*

*Reno*, 115 F.3d 1555 (11th Cir. 1997), the Eleventh Circuit warned against using the employer's rationale for the adverse action to prevent an employee from proving a *prima facie* case of discrimination. *Id.* at 1562 n.3; *see also Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1019 (11th Cir. 2001) (holding that the plaintiff's inability to pass a prescribed written test did not render him unqualified for the promotion, and analyzing the defendant's reason for denying the plaintiff a promotion – *i.e.*, that he did not pass the required written examination – at the pretext stage, *see id.* at 1015 n.1 & 1019-20). Accordingly, on this record, the fact that Ms. Willis failed the PAT is not a barrier to establishing the second element of her *prima facie* case.

Santa Fe contends that Ms. Willis cannot satisfy the fourth element of her *prima facie* case because Mr. Gentz and Mr. Gorski "occupied the two most senior supervisory positions at Fort Rucker," and the "material differences in the rank and job responsibilities preclude [them] from being" similarly situated to Ms. Willis. (Def. Reply 3 (Doc. # 39).) Santa Fe's emphasis on rank is misplaced.

To be sure, in employment discrimination cases, differences in job titles and responsibilities between an employee and the comparator can play a significant role in the similarly situated analysis, such as in the discriminatory discipline cases cited by Santa Fe. For example, in *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269 (11th Cir. 2008), "rank clearly matter[ed]" in assessing whether evidence of disparity in the punishment meted out to the plaintiff and his proposed comparator was indicative of pretext. *Id.* at 1281 ("It cannot be said that conduct that might be tolerated or treated with progressive discipline at lower ranks

10

must be similarly accepted from the Chief's immediate advisors, who are held to a higher level of professionalism and who are expected to set the standard of conduct for the department."). However, Santa Fe's reliance on *Rioux* and similar cases stops short of factual or meaningful analysis, and none of those cases involved allegations of unequal enforcement of policies used in the hiring process. Rather, without explanation, Santa Fe urges this court to adopt a blanket rule that "[a]s a matter of law, supervisors and their subordinates are not proper comparators for purposes of a disparate treatment claim." (Def. Reply 3.) The cases relied upon by Santa Fe do not lend support to that adoption.

Significantly, as recognized in *Rioux*, "differences in job ranks between a plaintiff and another employee are not, in and of themselves, dispositive as to whether the two individuals may be compared for purposes of evaluating a discrimination claim." 520 F.3d at 1281 (citing *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999)). That was the case in *Lathem*, where the Eleventh Circuit upheld a jury verdict of sex discrimination when a female secretary was fired for a relationship with juveniles in the care of the agency, while her male supervisor merely was transferred for the same misconduct. 172 F.3d at 793. The employer argued that "if two employees have different job titles, they are not similarly situated" and, therefore, there is no proof of "discriminatory intent through differential treatment." *Id.* Although disagreeing, the Eleventh Circuit recognized that, "[i]f two employees are not 'similarly situated,' the different application of workplace rules does not constitute illegal discrimination." *Id.* However, it held that "[t]he relevant inquiry [was] not whether the employees h[e]ld the same job titles, but whether the employer subjected

11

them to different employment policies." *Id.* Because the plaintiff and her supervisor were subjected to the same employment policies, but one was fired and the other was transferred for engaging in the same conduct, they were similarly situated, notwithstanding their differences in rank. *Id.*; *see also Evans v. Ala. Dep't of Corr.*, 418 F. Supp. 2d 1271, 1277 (M.D. Ala. 2005) ("Because the defendants have offered no evidence that [the plaintiff] operated under different workplace rules or policies from those of the proposed comparators, the difference in titles will not defeat the fourth element of [the plaintiff's] prima-facie case.").

Here, Ms. Willis argues that she, Mr. Gentz and Mr. Gorski were subject to the same hiring policy because Santa Fe's PAT Policy applied to all of Santa Fe's personnel. For one, Ms. Willis points out that, under Santa Fe's PAT Policy, "[a]ll guard force personnel" are required to take the PAT, and that, because the Chief of Guards and Deputy Chief of Guards are expressly designated as "guard force personnel" for purposes of weapons training, they are by clear implication included in the phrase "guard force personnel" for purposes of taking the PAT. (PWS § I.4.10; Pl. Summ. J. Resp. 7.) For another, Ms. Willis submits the "Questions and Answers," included with the Solicitation, among which was the following: "57. Comment/Questions: PWS 1.4.10.1 – is the Chief and Assistant Chief required to take [the] PAT? Response: Yes."[8] (Q&A (Ex. 4 to Doc. # 37).) Santa Fe has not pointed to any language in the PAT Policy that exempts the Chief of Guards and Deputy Chief of Guards

---

[8] Construing the evidence in the light most favorable to Ms. Willis, the court assumes, and no contrary evidence has been submitted, that "Chief" and "Assistant Chief" refer to the "Chief of Guards" and "Deputy Chief of Guards," respectively.

12

from taking the PAT or any language that grants Santa Fe discretion in determining which of its employees must take the PAT. (*See* Def. Summ. J. Br. 12; *see also* PWS § I.4 (Santa Fe was required to provide "only the personnel" who had, among other things, successfully completed the PAT).) The evidence raises a genuine issue of material fact as to whether Ms. Willis, Mr. Gorski and Mr. Gentz were subject to the same PAT Policy. Assuming they were, as the court must on summary judgment, then Santa Fe is faced with evidence that it did not apply its PAT Policy congruously when it excused Mr. Gorski and Mr. Gentz, but not Ms. Willis, from taking the PAT. In short, neither Santa Fe's arguments nor its cited authority persuades that Mr. Gorski's and Mr. Gentz's supervisory duties and titles are material distinctions that preclude them from being valid comparators, given Ms. Willis's demonstration that all three were subject to the same PAT Policy.[9]

Santa Fe's only other attempt to set apart Mr. Gorski and Mr. Gentz from Ms. Willis is an assertion that "[t]he Contracting Officer made an agreement with Santa Fe that the persons" in the positions of Chief of Guards and Deputy Chief of Guards "were not required to take the PAT." (Pretrial Order 7 (Doc. # 58).) This argument was not raised in Santa Fe's summary judgment brief, but rather was raised for the first time in its contentions embodied in the Pretrial Order. The untimely argument, therefore, need not be considered. Even if the argument were timely, the only evidence gleaned from the summary judgment record that supports the argument is hearsay. (*See* Gentz Dep. 13 (testifying that his boss told him that

---

[9] It should be noted also that this case presents a different scenario than in *Armstrong*, where the Eleventh Circuit held that the PDA plaintiff failed to establish differential application of the hospital's policy requiring all nurses to treat patients assigned to them because the policy "had been applied in exactly the same way to pregnant and non-pregnant employees." 33 F.3d at 1314.

13

neither he (as the Chief of Guards) nor the Deputy Chief of Guards had to take the PAT)); *see Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("The general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'" (citation and internal footnote omitted)). Furthermore, admissible evidence of the existence of a side agreement would only confirm, not dispel, the existence of a material factual dispute.

In sum, based upon the evidence of an inconsistent application of the PAT Policy, genuine issues of material fact exist as to whether Ms. Willis was treated differently than her comparators – by being required to take the PAT – because of her sex and pregnancy-related medical condition. Ms. Willis, therefore, has established a *prima facie* case of discrimination.

Finally, careful consideration has been given to whether Ms. Willis's rebuttal to Santa Fe's proffered, legitimate reason for not hiring her – her failure to pass the PAT – creates a jury issue on pretext. At the *prima facie* case stage, the emphasis was placed on *how* Santa Fe applied its PAT Policy, rather than on *which* policy it chose. While Santa Fe is adamant that it was required to adhere to the version of AR 190-56 in effect in September 2006, Ms. Willis points out that Santa Fe's Policies also mandated that Santa Fe ensure that AR 190-56 was "'up to date.'" (Pl. Summ. J. Resp. 22 (quoting PWS § 6).) Ms. Willis contends that AR 190-56 was updated by the 2008 Memorandum from the Army's Office of Provost Marshal General, which detailed the pending overhaul of AR 190-56 and recommended against taking adverse action against an employee, *see supra* note 5, and that Santa Fe knew about the memorandum (*see* Crawford Aff. ¶¶ 4, 6), but ignored it. This evidence raises genuine issues

14

of material fact as to whether the 2008 Memorandum from the Army's Office of the Provost Marshal General, was an "update," whether Santa Fe had notice of the 2008 Memorandum, and ultimately, whether the 2008 Memorandum is evidence of procedural irregularities in Santa Fe's decisions regarding its PAT Policy.  *See Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008) ("[P]retext can be shown in any number of ways, including but not limited to differential treatment of similarly situated employees and procedural irregularities." (citation and internal quotation marks omitted)).  In short, the relevance and materiality of the 2008 Memorandum need to be fleshed out at trial.  After due consideration, the court finds that the totality of the evidence raises genuine issues of material fact as to pretext.  Accordingly, Santa Fe's Motion for Summary Judgment will be denied.

## V.  CONCLUSION

For the foregoing reasons, the court finds that there are genuine issues of material fact that preclude the entry of summary judgment on Ms. Willis's PDA and Title VII failure-to-hire claims and that on this record "the better course would be to proceed to full trial" on all claims.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Accordingly, it is ORDERED that Santa Fe's Motion for Summary Judgment (Doc. # 30) is DENIED.

DONE this 15th day of February, 2011.

                                                                  /s/ W.  Keith Watkins
                                          UNITED STATES DISTRICT JUDGE